**John M. TRENT and Lisa M. Trent, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 347, Docket 26813.**

United States Court of Appeals Second Circuit.

Argued May 8, 1961.

Decided June 9, 1961.

Edmund K. Trent, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., of counsel), for petitioners.

Richard J. Heiman, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and Richard J. Heiman, Attorneys, Department of Justice, Washington, D. C.), for respondent.

Before FRIENDLY and SMITH, Circuit Judges, and WATKINS, District Judge.*

FRIENDLY, Circuit Judge.

The question is whether a corporate employee who makes loans to the corporation in order to hold his job may deduct for a business bad debt if the loans become worthless. Despite the Tax Court's statement, echoed before us by the Commissioner, that to give an affirmative answer "it would be necessary to overrule a large proportion of the cases dealing with this subject," the Commissioner has cited no decision of the Supreme Court or of a Court of Appeals squarely in his favor. Neither has the taxpayer. There are dicta favorable to the Commissioner; the language of the statute and decisions under other sections favor the taxpayer. We hold for him.

From 1938 to 1953, save for five years in the Navy, Trent had been employed by

* United States District Judge for the Northern and Southern Districts of West Virginia, sitting by designation.

American Express Co. In August, 1953, he accepted employment by Edward F. Caldwell & Co., Inc. at $150 a week; he was also to serve as vice president and business manager of Plastic Illuminating Co., Inc., of which Caldwell was president and had been half owner. Trent was required to pay $5,000 for one-third of the stock of Plastic; Caldwell also told him that he would be expected to make loans to the companies until their cash condition improved. On eleven occasions between February and September, 1954, Trent, at Caldwell's request, made advances, nine to Caldwell, Inc. and two to Plastic, sometimes on the specific representation that unless he did so, supplies would be cut off by vendors and the business shut down. Some advances were repaid but a balance of $8,900 was not. Late in September, 1954, Trent was asked by Caldwell to make a further advance of $5,000 to Caldwell, Inc. He was advised that unless he did, the company would not be able to pay his salary and he would be fired. Trent did not make the advance; he was fired. In 1955, Trent demanded repayment but was told the companies were without funds; however, it was agreed he should assign to Caldwell his claims against Caldwell, Inc. for $100, his claims against Plastic for $550, and his Plastic stock for $100, the entire consideration of $750 to consist of lighting fixtures to be turned over by Caldwell, Inc.

In Trent's 1955 return, he deducted the unpaid balance of the loan, $8900, less $650, or a net of $8250, as a business bad debt, Internal Revenue Code of 1954, § 166, 26 U.S.C.A. § 166. The Commissioner disallowed the deduction, claiming that the debt was "nonbusiness" under § 166(d) and that, as provided in that subsection, which embodies an amendment first made by the Revenue Act of 1942, § 124, 56 Stat. 798, 820, a deduction could hence be taken only for a short-term capital loss. Taxpayer petitioned for review.

The Tax Court treated the case on the basis, not questioned here by the Commissioner, "that the advances were, in fact, loans as distinguished from capital contributions (as to Plastic), for which petitioner expected to be repaid and that the debts actually became worthless in 1955 to the extent claimed by petitioner"; the sole issue was whether they were business or nonbusiness bad debts. The Tax Court also accepted "petitioner's contention that he was required to advance the funds in dispute to the companies as a condition to his continued employment in the business"—thereby taking out of the case any claim that Trent had made the loans to protect his $5,000 investment in Plastic. Although the Tax Court said the issue " 'is a question of fact in each particular case,' " the opinion makes evident that the Court's denial of the deduction rested, not on any facts peculiar to this case— which, indeed, were about as strong for a taxpayer making such a claim as any could be—but upon the Tax Court's view, based in part upon the statement in Wheeler v. C. I. R., 2 Cir., 1957, 241 F.2d 883, 884, mentioned below, that, as a matter of law, loans made to a corporation by an employee for the purpose of protecting his employment cannot be "a debt created or acquired (as the case may be) in connection with a taxpayer's trade or business," § 166(d) (2) (A). The decision is thus fully reviewable here, C. I. R. v. Smith, 2 Cir., 1953, 203 F.2d 310, 311; August v. C. I. R., 3 Cir., 1959, 267 F.2d 829, 833.

■ It may be well to begin by looking at the statute, despite—or perhaps because of—all that has been written about it. The particular words here requiring construction, "in connection with a taxpayer's trade or business," are illuminated by reference to the general statutory scheme. Throughout the Internal Revenue Code there runs a distinction between those expenses and losses incident to the endeavor to earn a livelihood by "holding one's self out to others as engaged in the selling of goods or services," Deputy v. DuPont, 1940, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (concurring opinion of Mr. Justice Frankfurter), those incident to

other activities that are pecuniarily motivated, Higgins v. C. I. R., 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, and those incident to activities that are not. Deductions of the first class are usually allowed fully, some of the second and third only under limitations, and some, especially of the third class, not at all. The words which Congress has long used to mark off the first class are "trade or business," often with variations whose significance, or lack of it, we shall have to examine; the courts have properly assumed that the term includes all means of gaining a livelihood by work, even those which would scarcely be so characterized in common speech, Hill v. C. I. R., 4 Cir., 1950, 181 F.2d 906 [teacher]; Coburn v. C. I. R., 2 Cir., 1943, 138 F.2d 763 [actor]; Walter I. Geer, 1957, 28 T.C. 994 [judge]; Matilda M. Brooks, 1958, 30 T.C. 1087 [research worker];[1] and other instances cited in 4 Mertens, Law of Federal Income Taxation (1960) ch. 25, p. 22, fn. 66–69.

█ If "trade or business" includes such activities, the conclusion that it includes selling lighting fixtures would seem an easy one; and this is no less a "trade or business" of the employee because it is also one of the employer. Hence, if we were reading from a slate clean save for the statute, we should arrive rather swiftly at a holding that loans made by an employee to his employer in order to retain his job are as much "created * * * in connection with a taxpayer's trade or business" as loans by the employer to customers, suppliers, or employees in the interest of the business would surely be. Stuart Bart, 1954, 21 T.C. 880; Arthur Rubel, T.C.Memo 1954–135, 13 T.C.M. 827; J. T. Dorminey, 1956, 26 T.C. 940. Indeed, another section of the Code making provisions, not directly relevant here, as to deductions "attributable to a trade or business carried on by the taxpayer, if

such trade or business does not consist of the performance of services by the taxpayer as an employee," § 62(1), would have overcome any possible doubt that "the performance of services * * * as an employee" is "a trade or business" where the statute does not so expressly negate it. However, there is much other writing on the slate; we must determine whether it calls for reading the words of § 166(d) (2) (A) differently from what their sense would seem to be.

Despite statements that the words "trade or business" have "many shades of meaning, and are subject to colloquial abuses, Hughes v. C. I. R., 10 Cir., 1930, 38 F.2d 755, 759, the courts, quite understandably, have not regarded the various sections of the Code using that term as water-tight compartments. Indeed, the classic point of departure for almost any tour in this general area, regardless of the particular section concerned, is afforded by Dalton v. Bowers, 1932, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389, and Burnet v. Clark, 1932, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 337, both opinions by Mr. Justice McReynolds announced on the same day. They arose under similar statutory language, Dalton under § 206(a) of the Revenue Act of 1924, 43 Stat. 253, 260, 26 U.S.C.A.Int. Rev.Acts, Burnet under § 204(a) of the Revenue Act of 1921, 42 Stat. 227, 231. These sections carried forward a provision, first enacted in the Revenue Act of 1918, 40 Stat. 1057, 1060, permitting certain loss carry-overs. Section 204(a) of the 1921 Act limited the net losses eligible for carry-over to "net losses resulting from the operation of any trade or business regularly carried on by the taxpayer"; it prescribed a formula for arriving at this which, briefly stated, was the excess of normal deductions over various gross income items and "the amount by which the deductible losses not sustained in such trade or business

---

[1]. In certain of the cases cited the deduction was held not to be made out on the facts.

At one time Congress thought it necessary to provide specifically that "profes-

sions and occupations" came within the phrase "trade or business," Revenue Act of 1917, § 200, 40 Stat. 302, 303; it has long ceased to do so.

exceed the taxable gains or profits not derived from such trade or business." Section 206(a) of the 1924 Act got at the problem less back-handedly by defining the "net loss" eligible for carry-over as the excess of certain permitted deductions "over the gross income" with various "exceptions and limitations" of which that here pertinent was as follows:

"(1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business."

The issue in the Dalton and Clark cases was not the general one whether certain items were deductible but whether, as claimed by the taxpayers, they were "attributable to the operation of a trade or business regularly carried on by the taxpayer" [287 U.S. 404, 53 S.Ct. 206] and hence eligible for carry-over.

Dalton was an inventor. The loss he sought to carry over resulted from the acquisition of stock of one of several companies which he controlled having become worthless. The Supreme Court disallowed this, treating the amount expended for the stock as an investment and noting that "The petitioner endeavored to sell the corporate shares and thereby to obtain gains," 287 U.S. at page 406, 53 S.Ct. at page 205. Clark was in the dredging and allied businesses; he was majority stockholder, active head and president of Bowers Southern Dredging Co. and also a member of three partnerships in the same line of business. Bowers Southern had encountered difficulties; "at sundry undisclosed times" Clark had endorsed its notes in considerable amounts and was required in 1921 to make good on the endorsements. He also suffered large losses on the sale of its stock in 1921 and 1922. The Supreme Court declined to permit him to carry over these losses. It relied heavily on a statement by the Board of Tax Appeals, 287 U.S. at page 413, 53 S.Ct. at page 208, that Clark "testified that in endorsing the notes he was seeking to protect his investment in [the] stock" of Bowers Southern; Mr. Justice McReynolds said "The unfortunate indorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares," 287 U.S. at page 415, 53 S.Ct. at page 208. Clark's principal argument, which the Court rejected, was much like Dalton's—that his stock ownership and endorsements for Bowers Southern were part of his overall business, to wit, dredging; no specific contention was made they were necessarily incident to the trade or business of being president of Bowers Southern, and the record is silent as to compensation received by him from that company save for a $9,000 payment in one year from a creditors' committee.

It is plain that neither of these decisions involved the issue whether advances made by an employee to a corporation to protect not his investment but his job were "attributable to the operation of a trade or business regularly carried on by the taxpayer." Still less did they involve the question whether an employee's earnings from services were "gross income * * * from such trade or business." Why they were often thought to have settled both these issues in the negative may lie in the following history.

Two years earlier the Tenth Circuit had decided Hughes v. C. I. R., 1930, 38 F.2d 755. Hughes was a lawyer, who had also been a bank director and a partner in an investment firm. The losses he sought to carry over, under § 204(a) of the Act of 1921, had resulted from the latter activity. No one questioned they were "attributable to the operation of a trade or business regularly carried on by the taxpayer"; the issue was whether Hughes' professional and bank director activities, which had been profitable, were or were not such a "trade or business." The Government claimed that they were, since their inclusion would reduce the carry-over loss, Hughes that they were not. The Court of Appeals

ruled for Hughes. Reviewing the history of the carry-over provision, which had been enacted to deal with losses from swollen inventories accumulated during World War I, the Court held "the section has no application to wage-earners, salaried or professional men." This was shortly followed by Ida A. Van Dyke, 1931, 23 B.T.A. 946, 949, where the Board of Tax Appeals refused to consider losses from loans made by a shareholder and officer to a lumber company as coming within § 204(a) of the 1921 Act, on the ground that taxpayer's regular business was developing town sites and organizing public utilities and that his primary purpose with respect to the lumber company was "making an investment in the company for a profit." By the time the case reached the Ninth Circuit, the Dalton and Clark cases had been decided by the Supreme Court, and the Court of Appeals affirmed on their authority, 1933, 63 F.2d 1020, as did the Supreme Court, 1934, 291 U.S. 642, 54 S.Ct. 437, 78 L.Ed. 1040. There was nothing in Van Dyke to require the Supreme Court to deal with either of the issues noted above which had not been dealt with by it in Dalton and Clark, although they had been by the Tenth Circuit in Hughes. However, in McGinn v. C. I. R., 9 Cir., 1935, 76 F.2d 680, the Court of Appeals took the Supreme Court decisions, including the *per curiam* affirmance of its decision in Van Dyke, as being inconsistent with Washburn v. C. I. R., 8 Cir., 1931, 51 F.2d 949, which had disagreed with Hughes; on that score, it held in McGinn that losses incurred in following the trade or business of being a corporate officer did not result "from the operation of a trade or business regularly carried on by the taxpayer." This, we think, attributed to the Supreme Court decisions an effect they had not possessed.

Long afterwards, this Court was confronted with the problem, in Folker v. Johnson, 2 Cir., 1956, 230 F.2d 906. That case arose under § 122 of the 1939 Code, 26 U.S.C.A. § 122, which provided for carry-backs and carry-overs of "net operating loss." Section 122(d) (5) said that in computing such loss, deductions "not attributable to the operation of a trade or business regularly carried on by the taxpayer shall * * * be allowed only to the extent of the amount of the gross income not derived from such trade or business." The deductions sought to be carried over were admittedly "not attributable to the operation of a trade or business regularly carried on by the taxpayer"; the issue was whether salary as a corporate officer was likewise "gross income not derived from such trade or business," so that, as the taxpayer contended, the non-business losses could be deducted therefrom. In other words, Folker, like Hughes (although for a somewhat different reason) but unlike Dalton, Clark, Van Dyke and McGinn, was interested in obtaining a decision that working for a company was *not* a trade or business. In that endeavor he failed. This Court said, 230 F.2d at page 907, that "The phrase 'trade or business' has a common and well-understood connotation as referring to the activity or activities in which a person engages for the purposes of earning a livelihood"; it distinguished the Dalton and Clark cases and its own decision in C. I. R. v. Smith, supra, as involving "attempts by corporate officers, directors, and stockholders to deduct from their personal income losses resulting from isolated loans to or investments in corporations in which they had a financial interest"; it characterized the Hughes and McGinn decisions as "distinguishable or erroneous"; and it held, 230 F.2d at page 909, that taxpayer "was engaged in a trade or business—the trade or business of rendering services for pay."

The Folker decision soon attracted a wide following. The Third Circuit adopted it almost immediately, Overly v. C. I. R., 3 Cir., 1957, 243 F.2d 576, recognizing the conflict with Hughes and condemning the Hughes decision as wrong; so also did the Fifth, Roberts v. C. I. R., 5 Cir., 1958, 258 F.2d 634, disapproving the Hughes case, the Fourth, Batzell v. C. I. R., 4 Cir., 1959, 266 F.2d

371, and the Ninth, Pierce v. United States, 9 Cir., 1958, 254 F.2d 885, that Court making no mention of its own decisions in Van Dyke v. C. I. R., supra, which doubtless was distinguishable, or in McGinn v. C. I. R., supra, which scarcely seems so. The tortuous tale of what is now § 172(d) (4) of the 1954 Code thus seems to have had a happy ending for the taxpayer here, five Courts of Appeals having held that being a corporate employee is a "trade or business" within that section.

We shall take next a much simpler story, the familiar provision, now § 162 (a), which allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Here the decided weight of authority long has been that a corporate officer may deduct expenses paid or incurred which were incident to the "trade or business" of being a corporate employee although they may also have been incident to the corporation's own trade or business. C. I. R. v. People's-Pittsburgh Trust Co., 3 Cir., 1932, 60 F.2d 187 [legal expenses of board chairman in defending against charges of unlawful filing of tax returns]; Schmidlapp v. C. I. R., 2 Cir., 1938, 96 F.2d 680 [unreimbursed entertainment]; Hochschild v. C. I. R., 2 Cir., 1947, 181 F.2d 817 [expenses of corporate officer in defending suit arising out of his duties]; Noland v. C. I. R., 4 Cir., 1959, 269 F.2d 108, 111 [statement that "every person who works for a compensation is engaged in the business of earning his pay"; particular expenses disallowed]; see Griswold, Cases on Federal Taxation (1960), p. 327.

This line of decisions would seem of special importance in that their principle was so well-established in 1942 when Congress for the first time limited the full bad debt deduction to business bad debts. It might be contended against

this that the language differs, § 162(a) referring to expenses in "carrying on any trade or business," whereas § 166(d) speaks of "a debt created or acquired * * * in connection with a taxpayer's trade or business," arguably a more limited concept, although on such a view the predecessors of § 172(d) (4), which use the phrase "the operation of a trade or business regularly carried on by the taxpayer," would be more limited still,[2] and inferences unfavorable to the deduction under § 166 that have sometimes been drawn from the Dalton and Clark cases would be only dubiously applicable. It seems questionable that Congress could have expected the courts to possess scales sufficiently sensitive to register such delicate differences in expression, although it surely would be nicer if the draftsmen of the revenue acts would use the same words when they mean the same thing and altogether different words when they mean different things.[3] Moreover, it is plain, both from language and decision, that § 162(a) and its predecessors, as well as related sections, do not allow a taxpayer to make deductions on account of "any trade or business" save his own, Deputy v. DuPont, supra, 308 U.S. 493–494, 60 S.Ct. 366. Finally, the committee that proposed the 1942 amendment changing the treatment of nonbusiness bad debts, took the ground out from under any such argument when it said the required determination "is substantially the same as that which is made for the purpose of ascertaining whether a loss from the type of transaction covered by section 23(e) [of the 1939 Code, now § 165(c) (1) ] is 'incurred in trade or business' under paragraph (1) of that section," H.R.Rep. No. 2333, 77th Cong. 1st Sess., 1942—2 Cum.Bull. 431.

It is unnecessary to discuss other sections of the Code which speak of "trade or business," such as § 167(a) (1) [depreciation], § 871 [tax on non-resident

---

2. The Fifth Circuit, in Roberts v. C. I. R., supra, rejected an argument to that effect based upon stressing the word "operation."

3. Note that, in § 166(d) (2) itself subdivision (A), as amended in 1958, speaks of "a trade or business of the taxpayer" whereas subdivision (B) speaks of "the taxpayer's trade or business."

aliens], see Van der Elst v. C. I. R., 2 Cir., 1955, 223 F.2d 771, and § 1221 [capital assets], see Workmen's Mutual Fire Ins. Society, Inc. v. A'Hearn, 2 Cir., 1961, 286 F.2d 718 and cases there cited. For our analysis of the loss carry-over and carry-back decisions, as these have developed, and of the expense decisions, as they have always been, sufficiently confirms what we deem to be the natural meaning of § 166(d) (2) (A) with respect to the business character of loans made by a corporate employee in connection with retaining employment, unless controlling decisions under that very section require a different result.

Putnam v. C. I. R., 1956, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144, held a debt to be non-business, but Putnam's case was quite different from Trent's. Putnam's trade or business was that of a lawyer; "His venture into the publishing field was an investment apart from his law practice," 352 U.S. at page 92, 77 S.Ct. at page 180. That was likewise the situation in Omaha National Bank v. C. I. R., 8 Cir., 1950, 183 F.2d 899, 25 A. L.R.2d 628; on the other hand, Giblin

v. C. I. R., 5 Cir., 1955, 227 F.2d 692, held that where a lawyer spent half his time developing corporations and then disposing of them, a loan to one of them was a business debt. In the cases in this Circuit where debts were held to be non-business there was no adequate showing that the loan was made in aid of a trade or business rather than as an investment or to protect one.[4] None of these decisions is contrary to taxpayer here, although language in two of them might well be. The statement, in C. I. R. v. Smith, supra, 203 F.2d at page 312, that "serving as an officer of a corporation of which the taxpayer is a stockholder and creditor" does not constitute a trade or business, citing the Van Dyke, McGinn, Clark and Dalton cases, supra, was recognized in Folker v. Johnson, supra, 230 F. 2d at page 909, fn. 4, to be "unnecessary to that decision, and * * * clearly a dictum which we need not follow," in dealing with the very section to which the cited cases related and one of which, McGinn, the Court expressly declined to follow. Similarly, we fear the statement in Wheeler v. C. I. R., supra, 241 F.2d at

4. C. I. R. v. Smith, 2 Cir., 1953, 203 F. 2d 310, 311 [general manager and stockholder of department store, also in other business ventures; loans to dairy farm, to which taxpayer gave some supervision "in the evenings and on Saturdays and Sundays"]; Hickerson v. C. I. R., 2 Cir., 1956, 229 F.2d 631 [sole stockholder and president of advertising agency; loan to newspaper of which he became stockholder and officer]; Schaefer v. C. I. R., 2 Cir., 1957, 240 F.2d 381 [guarantees and loans by moving picture executive and distributor to wholly owned production company; taxpayer received no compensation from latter]; Wheeler v. C. I. R., 2 Cir., 1957, 241 F.2d 883 [loans and guarantees by persons who were large stockholders and officers of family owned business]; Towers v. C. I. R., 2 Cir., 1957, 247 F.2d 233, 235 [accepted finding of Tax Court that loans made "because of petitioners' practical interest in the company"].

In other circuits, see, holding business bad debts, Maloney v. Spencer, 9 Cir., 1949, 172 F.2d 638 and Stokes v. C. I. R., 3 Cir., 1953, 200 F.2d 637; holding nonbusiness, Berwind v. C. I. R.,

3 Cir., 1954, 211 F.2d 575; Nicholson v. C. I. R., 10 Cir., 1954, 218 F.2d 240; Skarda v. C. I. R., 10 Cir., 1957, 250 F. 2d 429; Rollins v. C. I. R., 4 Cir., 1960, 276 F.2d 368; Allen v. C. I. R., 7 Cir., 1960, 283 F.2d 785.

The issue in most of these cases was whether a taxpayer was engaged in such general and regular promotional or financing activities that his loan to a particular corporation was in connection with such business, as claimed by the taxpayers, or an investment as claimed by the Government—not whether a loan to a corporation by an employee in connection with the trade or business of being one met the statutory requirement. Perhaps the Berwind case comes close to that; but there the taxpayer was an officer of a corporation other than the borrower and nothing in the opinion suggests his continuation as such depended on his making the loan. Much of the discussion in the cases relates to the "regularity" of taxpayer's alleged general promotional or financing activity; there is no similar problem of regularity in the case of an employee.

page 884, that "The only instance where a shareholder or officer may deduct debts of his corporation to him as business bad debts under § 23(k) is where his business can be considered to be the promoting and financing of business enterprises" was too broad. Such absolute declarations are always hazardous; the undoubted truth that a loan from a shareholder or officer is a business debt if the lender's business is "the promoting and financing of business enterprises" does not make it inevitable that in no other instance may a loan from an officer be that. Where, as here, it is plain that the loans were made in connection with the taxpayer's "trade or business of rendering services for pay," Folker v. Johnson, supra, 230 F.2d at page 909, the statutory requirement has been met.

Judgment reversed.