George P. WEDDLE and Bertha R. (Terris) Weddle, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 41, Docket 28189.

United States Court of Appeals Second Circuit.

Argued Oct. 2, 1963.

Decided Dec. 10, 1963.

Robert A. Slavitt, Slavitt & Connery, Norwalk, Conn. (Abraham D. Slavitt, Harry M. Lessin, Norwalk, Conn., of counsel), for petitioners.

Alan D. Pekelner, Washington, D. C.. Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, for respondent.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

George P. Weddle and his wife, Bertha, petition for review of a decision of the Tax Court assessing a deficiency of $9,-865.69 in income tax for 1955, during which they resided in East Norwalk, Connecticut. Since the husband is concerned with this litigation only as a result of filing a joint income tax return, we shall use the terms petitioner or taxpayer as referring solely to Bertha Weddle.

Mrs. Weddle's former husband, Arthur Terris, owned at his death in 1945 all 250 shares of the outstanding stock of Terris Brothers, Inc., a New York corporation formed in 1933 for the purpose of manufacturing and selling ladies' lingerie. He bequeathed 60% of the stock to his widow and 20% to each of two daughters. In March, 1951, the corporation purchased the stock of one daughter for $65,000, of which $45,000 was then paid.

After her husband's death, the taxpayer, who had previously been a housewife, devoted almost her full time to the operation of the corporation's business as president and general manager. She received a salary which gradually decreased from $25,000 a year for 1945 through 1949 to about $17,000 for 1952 through 1954. Beginning in 1951, Mrs. Weddle also operated a real estate company, the controlling shares of which she had inherited from her father. On Arthur Terris' death in 1945, his corporation's 250 shares were valued at $205,000. Its book net worth was $337,220.01 and $204,598.33 as of December 31, 1950, and December 31, 1951, respectively.

In March, 1951, in order to obtain a line of credit for Terris Brothers, Inc., Mrs. Weddle agreed to endorse and guarantee all loans made to it by the Public National Bank. Loans made during any year were to be paid by the end of January of the following year. The corporation paid the loans made during 1951 and 1952, but in March, 1954, when $85,000 remained outstanding, the bank insisted that Mrs. Weddle either liquidate the debt or collateralize the loan with marketable securities; she took the latter

course. The corporation made partial repayment until the indebtedness was reduced to $59,945.58 in September, 1954. At that time Mrs. Weddle, as an officer and director of the corporation, entered into an agreement assigning its assets to trustees for the benefit of creditors. After liquidation of the corporation, a balance of the loan amounting to $34,-191.64 remained unpaid. Mrs. Weddle paid this in 1955.

On their joint income tax return for 1955, the petitioners deducted from ordinary income the loss incurred upon this payment. The Commissioner disallowed this on the ground that the loss arose out of a nonbusiness bad debt and therefore was deductible only as a short-term capital loss. The Tax Court, although finding that Mrs. Weddle was engaged in the trade or business of being the president and general manager of Terris Brothers, Inc., sustained the Commissioner on the ground that her endorsement of the corporation's notes was not shown to be proximately related to that trade or business. 39 T.C. 493, 495 (1962).

Section 166(a) and (d) of the 1954 Code permits deduction of any debt, other than a nonbusiness debt, which becomes worthless during the taxable year. A nonbusiness debt is defined, § 166(d) (2), as any debt other than "(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Treasury Regulation § 1.166-5 (b) somewhat elaborates upon this definition by providing that the loss is deductible only if "the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer" is "proximate."

■ Taxpayer contends that the Tax Court's decision is contrary to our ruling in Trent v. C. I. R., 291 F.2d 669 (2 Cir. 1961), reversing 34 T.C. 910 (1960). But in that case there was and could be no real dispute that the loan made by Trent to his corporate employers arose from his trade or business of being an

employee; indeed, as we stated, the facts "were about as strong for a taxpayer making such a claim as any could be." 291 F.2d at 670. The Tax Court's disallowance of a deduction in that case had stemmed rather from its belief, which we held erroneous, "that, as a matter of law, loans made to a corporation by an employee for the purpose of protecting his employment cannot be" a business debt. Ibid. Here the Tax Court, recognizing the law to be as we had stated, rested its denial of a deduction on a factual finding that, unlike Trent, Mrs. Weddle had failed to sustain her burden of showing that protection of the trade or business of employment had been a significant motivation for endorsing the notes. The sole question before us is whether we ought upset that finding, taking account of the protection afforded it by the "unless clearly erroneous" rule of F.R.Civ.Proc. 52(a), applicable to review of decisions of the Tax Court by virtue of § 7482(a) of the Internal Revenue Code—a rule which, the Supreme Court has told us, applies not only to evidentiary facts but "to factual inferences" therefrom. C. I. R. v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960).

Some passages in the Tax Court's opinion, if read alone, might suggest that the court was proceeding on what we would regard as an erroneous view of the law, namely, that a taxpayer like Mrs. Weddle has the burden of proving that her "primary" motivation was to protect the trade or business of corporate employment in order to be entitled to the deduction. That is not what is said either by the statute or by the Regulations, which the Supreme Court inferentially approved in Whipple v. C. I. R., 373 U.S. 193, 204, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963). In the law of torts, where the notion of "proximate" causation is most frequently encountered, a cause contributing to a harm may be found "proximate" despite the fact that it might have been "secondary" to another contributing cause. See 2 Harper & James, The Law of Torts, §§ 20.2 and 20.3; American Law Institute, Restatement, Torts, §§ 432(2), 433, 439, 875, 879 (1939); Restatement Second, Torts, § 443A at 54 (Tent. Draft No. 7, 1962), § 442B at 29 (Tent. Draft No. 9, 1963). So here, particularly in view of the back-handed wording of § 166, it suffices for deduction that the creation of the debt should have been significantly motivated by the taxpayer's trade or business, even though there was a non-qualifying motivation as well. But this, we believe, was the standard the Tax Court in fact employed.

We are not impressed by the point, mentioned by the Tax Court, that comparison of Mrs. Weddle's salary with her share of the net worth figures cited above (or, on the variation urged before us, of a valuation of $260,000 for the business based on the company's agreement to pay $65,000 for the daughter's 20% interest) shows that Mrs. Weddle's only significant motivation was to protect her investment. Although such computations would not be truly convincing even if the business was worth this much at dates relevant to this case, it manifestly was not. The company had earned only $8900 in 1950; it lost over $45,000 in the first six months of 1951 and more than $69,-000 for the year; and its condition seems to have gotten worse in 1952 and 1953. That Mrs. Weddle, unlike Trent, did not have to fear being fired by a superior is also not at all conclusive as to what she was trying to protect; she would have been fired soon enough if the company had to cease operations through inability to obtain credit—as she was when it ultimately did.

Reading the Tax Court's opinion as a whole, we believe it did not turn on any of these make-weights, but rather, as we have said, on the finding that "though bearing the burden of proof, petitioner has failed to establish that the debt in question was proximately related to her trade or business of being president and general manager rather than her status of controlling stockholder and practical owner of a substantial business." This clear statement followed the court's quotations of portions of Mrs. Weddle's tes-

timony that were seriously damaging to her claim—notably her statement that the bank wouldn't grant a loan to Terris Brothers, Inc. without an endorsement and "I would think as owner of the business, practically owner of the business, it was up to me to guarantee the security of the loan." Moreover, we regard it as highly significant that the need for a $60,000 loan in 1951, and Mrs. Weddle's guarantee of it, coincided with the corporation's agreement to purchase the daughter's stock for $65,000 with a down payment of $45,000—a transaction which was surely not related to maintaining Mrs. Weddle's position as an employee; the depletion of working capital occasioned by the stock acquisition seems rever to have been made good. We thus cannot properly upset the Tax Court's finding.

Affirmed.

LUMBARD, Chief Judge (concurring).

I concur in affirmance of the Tax Court's decision.

However, I believe that my brothers have misapprehended the basis upon which the Tax Court rested its decision. The majority states that it would regard as erroneous the view that Mrs. Weddle bore the burden of proving that her primary motivation was to protect her trade or business as a corporate employee rather than to protect her substantial investment in Terris Brothers, Inc. I do not agree. Moreover, I believe that the Tax Court properly applied this standard in sustaining the Commissioner's deficiency assessment.

Where a corporate employee and stockholder makes loans to the corporation two fundamental motivations will inevitably be involved, that of protecting the taxpayer's investment in the corporation and that of protecting his salary interest. Unless the salary interest is so small as to be of negligible value its preservation will surely weigh in the mind of the taxpayer in advancing monies to the corporation. Consequently, to measure the proximateness of the relationship between the loan and the taxpayer's status as a corporate employee by asking whether the latter provides a "significant"—although not the dominant—motivation is to pose a question which invariably will be answered in the affirmative. To import notions of proximate causation distilled from the great body of tort law into consideration of § 166 is of little value, because factors such as time, space, and foreseeability, and the very basic notion of causation in fact which underlies the law of proximate causation are by their nature incapable of application to a problem which requires dissection of different motivations toward a similar objective. Were I disposed to accept as proper the standard proffered by my brethren, I should feel constrained to support reversal of the Tax Court's determination, inasmuch as I cannot see how one could deny that Mrs. Weddle was "significantly" motivated by a desire to preserve her salary.

But such an expansive definition—which would bring within the ambit of § 166 any loan which is "significantly" motivated by a desire to preserve the taxpayer's salary interest—is manifestly inconsistent with the long course of decisions in which that section and its predecessors have been considered. These decisions have taught that the courts must take great care to "distinguish bad debts losses arising from [the taxpayer's] own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business." Whipple v. Commissioner, 373 U.S. 193, 202, 83 S.Ct. 1168, 1174, 10 L.Ed.2d 288 (1963). In attempting to draw this distinction, as the Tax Court wisely noted in considering Mrs. Weddle's claim, we have no "scales sufficiently sensitive to be able to ascertain the exact percentage of motivations which impelled [her actions]," and therefore "we look to the main and dominant reason for [her actions]."

Computed by reference to the purchase price of the stock which the corporation bought from one of the daughters, Mrs.

Weddle's stock was worth approximately $195,000 in March 1951, when she first endorsed the corporation's notes upon the demand of the bank. During this year her salary was $18,500. The substantial disparity between the value of her total investment in the company and the value of her salary might alone be sufficient to support the Tax Court's finding of fact that her endorsements were motivated primarily by a desire to protect her investment rather than her salary. But additional factors add weight to that determination. As the owner of the controlling interest in the corporation, Mrs. Weddle exercised the right to hire corporate employees and set their salaries. Although Mrs. Weddle's salary did decrease as the financial condition of the corporation gradually deteriorated, Mrs. Weddle herself determined the level of her salary. A variety of reasons, including possible tax consequences, may motivate a controlling shareholder in Mrs. Weddle's position either to take or forgo salary. The relationship between the value of such a shareholder's salary and the value of the total investment seems to me to be of negligible importance. To attach significance to such a unilateral determination of salary would be to invite evasion of the tax laws. Moreover, Mrs. Weddle herself testified at one point that the reason the bank required her endorsement was that since she was "owner of the business, practically owner of the business, it was up to me to guarantee the security of their loan."

For these reasons I believe the Tax Court applied the proper criteria and was fully justified in concluding that Mrs. Weddle's primary and dominant motivation for endorsing the corporation's notes was to protect her substantial investment in the business. My objections to the majority view are, in sum, threefold. First, if logically applied to any fact situation of which one might conceive, the majority's standard would result invariably in a judgment for the taxpayer. Secondly, the majority has refused to follow the logic of its own standard as applied to the facts of this case. Finally,

I can see no sense in this court's rejecting the Tax Court's easily understood and more easily applied standard and choosing in its place as vague and ambivalent a notion as "significant motivation."