CHARLES J. and HARRIET S. HASLAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haslam v. Commissioner
Docket No. 5463-70.
United States Tax Court
T.C. Memo 1974-97; 1974 Tax Ct. Memo LEXIS 225; 33 T.C.M. (CCH) 482; T.C.M. (RIA) 74097; April 18, 1974, Filed Anthony J. Feeney, Jr., for the petitioners. H. Stephen Kesselman, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1967 in the amount of $979.01 and a penalty pursuant to section 6651(a) [1] in the amount of $244.75. The only issue for our decision is whether petitioners are entitled to business or nonbusiness deductions for losses arising from their guarantee of debts of Charles *226 J. Haslam's wholly owned corporation. [2]
FINDINGS OF FACT Some of the facts have been stipulated are are so found. Petitioners, Charles J. Haslam and Harriet S. Haslam, are husband and wife who, at the time of the filing of the petition herein, resided in Slingerlands, New York. They filed their Federal joint income tax return for 1967 on April 15, 1969, with the district director of internal revenue in Albany, New York. From 1948 to 1954 Charles J. Haslam (hereinafter referred to as petitioner) was employed by the Dupont Company in their explosives division as a sales and technical representative. Prior to this time, he had worked a great deal with explosives in the army as a captain in the corps of combat engineers, and had received additional training in explosives at Michigan College of Mining and Technology where he received a bachelor of science degree in 1948. In 1954 petitioner and Earl Canavan (Canavan) established Northern Explosives, Inc. (Northern), a corporation engaged in the sale and distribution of *227 explosives. Petitioner and Canavan each owned 50 percent of the stock in Northern, each having an investment of $10,000. Petitioner managed the corporate business of Northern and was also employed by the corporation as a salesman, while Canavan took no active part in the corporate operations. Northern had three employees in addition to petitioner, two truck drivers and a part-time secretary. In 1957, petitioner bought out Canavan's interest in Northern for $10,000, thereafter owning 100 percent of the stock with an investment of $20,000. In 1960, Northern encountered financial difficulties and required additional cash to continue its operations. Thereafter petitioner guaranteed loans in the total amount of $100,000 made to Northern by the National Commercial Bank and Trust Company of Albany, New York (Commercial). To secure these guarantees petitioner pledged certain marketable securities and his personal residence. At the time petitioner guaranteed the loans, he was devoting his full time and effort to his employment with Northern. His salary was approximately $250 to $300 per week and, in addition, he received an automobile, funds for its maintenance and insurance, *228 medical insurance, and other employee benefits. With the exception of stock dividends of $4,000 to $5,000 per year (said dividends from securities of petitioner other than his stock in Northern), petitioner had no other source of income. Despite the loans to the corporation, Northern continued to experience financial difficulties. The corporation went into chapter XI status under the Federal Bankruptcy Act in 1961, and went bankrupt in 1964. Northern was unable to repay the loans guaranteed by petitioner, and in 1967 Commercial sold the securities pledged by petitioner for $70,464.58. Commercial applied $55,956 of this amount to the debt of Northern guaranteed by petitioner, and the remaining $14,508.58 to petitioner's liability on another debt obligation. Petitioner remained an employee of Northern until it went bankrupt in 1964. In June 1964 he obtained employment as a salesman of steel castings for Falvey Steel Castings, Inc. (Falvey). Petitioner's gross income from his draw against commissions from Falvey during the years 1964 to 1968 are as follows: Year
Draw Against Commissions 1964
$ 2,900.00
1965
14,025.00
1966
11,307.00
1967
10,704.06
1968
11,213.42
*229 During the year 1965 and 1966 petitioner's actual earned commissions were only approximately $10,000 per year. Sums petitioner received in excess of these amounts were cash advances against future commissions. On their joint Federal income tax return for 1967 petitioners claimed a business bad debt in the amount of $55,956 on the loss sustained on petitioner's guarantee of of the Northern loans. Respondent disallowed petitioners' claimed loss as a business bad debt, determining that it was deductible only as a nonbusiness bad debt. OPINION The sole issue for our decision is whether petitioners are entitled to a business or nonbusiness bad debt deduction for losses arising from their guarantee of debts of a corporation in which petitioner Charles J. Haslam was both an employee and an investor. A bad debt loss, deductible under section 166, is created where a taxpayer sustains a loss upon payment on the guarantee of a debt, and the debtor is unable to satisfy the guarantor. Putnam v. Commissioner, 352 U.S. 82 (1956); Stratmore v. United States, 420 F.2d 461 (C.A. 3, 1970); Estate of Martha M. Byers, 57 T.C. 568, 574 (1972), affirmed *230 per curiam 472 F.2d 590 (C.A. 6, 1973); Robert E. Gillespie, 54 T.C. 1025, 1031, affirmed by an unpublished order (C.A. 9, 1972). Thus, petitioners sustained a bad debt loss upon payment of their guarantee of Northern debts subsequent to its bankruptcy. Under section 166, business bad debt losses are deductible against ordinary income, while nonbusiness bad debt losses are deductible only as short-term capital losses. Petitioners argue that their bad debt loss is deductible as a business bad debt, while respondent argues that it is deductible only as a nonbusiness bad debt. The character of a bad debt loss is determined by the relationship it bears to the taxpayer's trade or business. A debt will only qualify as a business bad debt if it bears a direct relationship to the taxpayer's trade or business ( Hogue v. Commissioner, 459 F.2d 932, 939, fn. 11 (C.A. 10, 1972), affirming a Memorandum Opinion of this Court; Estate of Martha M. Byers, 57 T.C. 568, 577 (1972); Oddee Smith, 55 T.C. 260, 268 (1970), vacated and remanded per curiam 457 F.2d 797 (C.A. 5, 1972), opinion on remand 60 T.C. 316 (1973)), *231 and such relationship is a proximate one. I. Hal Millsap, Jr., 46 T.C. 751, 754, fn. 3 (1966), affd. 387 F.2d 420 (C.A. 8, 1968); Stratmore v. United States, 420 F.2d 461 (C.A. 3, 1970); sec. 1.166-5(b), Income Tax Regs. In the instant case, petitioners argue that their guarantees to Northern bear such a relationship to petitioner's trade or business as an employee of that corporation. It is clear that being an employee may constitute a trade or business for the purposes of section 166. Trent v. Commissioner, 291 F.2d 669 (C.A. 2, 1961); cf. David J. Primuth, 54 T.C. 374 (1970). It is also clear that the debt obligations in the instant case were directly related to petitioner's trade or business as an employee, in that petitioners' guarantees were required for Northern to obtain the funds needed to continue its operations and petitioner's employment. The determination of whether the guarantees were proximately related to petitioner's trade or business as an employee, however, presents a more difficult question, in that petitioner also had an interest in Northern as its sole shareholder. Being an investor in a *232 corporation does not constitute a trade or business, and losses resulting from guarantees made to protect a taxpayer's investment are not deductible as a business bad debt. Whipple v. Commissioner, 373 U.S. 193 (1963). Where a taxpayer sustains a loss on a guarantee to a corporation in which he has both an employee and stockholder interest, a proximate relationship between the taxpayer's trade or brusiness as an employee and his loss is established only if the taxpayer's dominant motivation in entering into the guarantees was to protect the employee interest. United States v. Generes, 405 U.S. 93 (1972). Petitioners, therefore, must prove that their dominant motivation in guaranteeing the loans to Northern was to protect petitioner's employment in order to establish the requisite proximate relationship. The determination of taxpayer's dominant motivation is a factual question on which the taxpayer bears the burden of proof. Oddee Smith, 60 T.C. 316, 318 (1973). The trier of fact must determine the taxpayer's overriding reason for incurring the obligation and, in so doing "compare the risk against the potential reward and give proper emphasis *233 to the objective rather than to the subjective." United States v. Generes, supra at 104. In Generes the employee-shareholder had an initial investment of approximately $40,000 in his corporation. He worked six to eight hours a week for the corporation at an annual salary of $12,000, and had full-time employment outside of the corporation as the president of a savings and loan association at an annual salary of $19,000. His annual gross income was approximately $40,000 per year. Other members of the taxpayer's family also had employment and investment interests in the corporation. The Supreme Court held that these factors would not support a finding that the taxpayer's dominant motivation in guaranteeing loans to his corporation was to protect his employment with the corporation. In its holding, the Supreme Court disregarded the taxpayer's testimony that his dominant motivation was related to his employment, determining that his testimony was self-serving and not supported by the facts. In the instant case, petitioner testified that his dominant motivation in guaranteeing loans to Northern was to protect his employment. It is our conclusion that the facts support *234 his testimony, and accordingly we hold that petitioner's loss is deductible as a business bad debt. Unlike the taxpayer in Generes, petitioner was a full-time employee of his corporation and he had no other employment. His salary from Northern was his major source of income. We note that petitioner's skills as an explosives' expert were not apparently readily marketable and that subsequent to Northern's bankruptcy petitioner obtained employment in a field unrelated to explosives at a salary less than he earned at Northern. Viewing the facts in the record realistically, we think it much more likely that petitioner was more interested in preserving his position as an employee rather than as an investor in Northern. It is clear that petitioner made the guarantees in the hope of preserving Northern's corporate existence.From his position as an investor, it is clear that the preservation of the corporation would at best afford him some prospect of saving the $20,000 he had invested in the corporation. From his position as an employee however, such preservation would assure petitioner's continued employment at an annual salary of approximately $15,000. In our opinion, an assured *235 salary of $15,000 per year over a period of years was a more valuable interest to petitioner than the mere possibility of recouping the already invested $20,000 in Northern, and the prospect of such continued employment was petitioner's dominant motivation in guaranteeing the loans to Northern. We thus decide the sole remaining issue for petitioner, but because of concessions. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified. ↩
2. Petitioners have conceded that the delinquency penalty inposed by respondent is warranted if there is a deficiency in their income tax for 1967. ↩