*Decision will be entered under Rule 50.*

ODDEE SMITH AND MABLE B. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3342–69. Filed May 31, 1973.

*Lauch M. Magruder, Jr.*, for the petitioners.
*Roy S. Fischbeck*, for the respondent.

OPINION

DRENNEN, *Judge:* In an opinion filed November 3, 1970 (55 T.C. 260), this Court concluded that the losses incurred by petitioner Oddee Smith from debts of Smith Petroleum Service, Inc., becoming worthless in 1965 and 1966 were proximately related to petitioner's trade or business and were deductible as business bad debts under section 166(a)(1), I.R.C. 1954; and decision was entered in accordance therewith on December 3, 1970. In so concluding, we applied the "significant motivation" test as the measure in determining whether the losses were proximately related to petitioner's business because the U.S Court of Appeals for the Fifth Circuit, to which an appeal in the case would lie, had recently held in *United States* v. *Generes*, 427 F. 2d 279 (C.A. 5, 1970), that the "significant motivation" test was the measure that should be used. Under the rule adopted by this Court in *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971), we were constrained to apply the measure approved by the Fifth Circuit in deciding this case, although we reiterated our opinion that the "dominant motivation" test was the correct measure. While this case was pending on appeal in the Court of Appeals, the Supreme Court decided, in *United States* v. *Generes*, 405 U.S. 93 (1972), that "in determining whether a bad debt has a 'proximate' relation to the taxpayer's trade or business, as the Regulations specify, and thus qualifies as a business bad debt, the proper measure is that of dominant motivation, and that only significant motivation is not sufficient."

Thereafter, the Court of Appeals vacated our decision and remanded this case to the Tax Court "for reconsideration in light of *United States* v. *Generes*," *supra.*

Upon remand petitioners moved that the Court order a further hearing to permit petitioners to submit additional proof with respect to petitioners' motivation in making advances to Smith Petroleum. Over respondent's objection the motion was granted, and the testimony of petitioners' accountant, who had not testified at the trial of this case, was taken by deposition. No further evidence was offered by either party.

On brief respondent reasserts his objection to receipt into evidence of the deposition of petitioners' accountant on the grounds that the appellate court mandate does not direct or authorize the taking of

further evidence and that the evidence was available to petitioners at the original trial, and they should not be given a second opportunity to try their case. It is true that the mandate of the Court of Appeals is silent with respect to a further hearing, and we had considerable doubt whether additional evidence should be considered, particularly in light of the fact that the Supreme Court entered judgment in the *Generes* case on the record before it rather than remanding the case to the trial court. However, both parties agreed that absent an appellate court order to do so, receipt of additional evidence after remandment of a case is a matter resting solely in the discretion of the trial court. *Levitt & Sons, Inc.*, 5 T.C. 913 (1945), affd. 160 F. 2d 209 (C.A. 2, 1947); *Steinhort* v. *Commissioner*, 335 F. 2d 496 (C.A. 5, 1964). In any event, the question is now moot because we find nothing in the deposition of the accountant that would warrant changing our findings of fact or that would cause us to reach a different conclusion as to petitioner's motivation with respect to the advances and loans to Smith Petroleum.

We will decide the issue before us on the findings of fact made in our original opinion, including our conclusion that in making the loans to Smith Petroleum petitioner was significantly motivated by a desire to protect his credit rating which was needed for his road construction business. However, the Supreme Court has told us in *Generes* that this is not enough to classify the debts as business bad debts.

In order to be entitled to deduct the loss on the debts as business bad debts it must be shown that petitioner's dominant motivation in advancing the funds which gave rise to the debts in issue was to protect his construction business or was otherwise proximately related to his construction business. The burden of proof is on petitioners. As implied in our original opinion, we are not convinced from the record that petitioner's dominant motivation for advancing funds to Smith Petroleum prior to 1966 was so related, although we do find that petitioner was dominantly motivated by business reasons in making the advances to Smith Petroleum in 1966 after Smith Petroleum ceased doing business.

The issue is factual and each case involving the issue must be decided on the record presented in that case.[1] Motivation being a subjective matter, the task is not easy. However, when a distinction has

---

[1] In his briefs on remand respondent stresses the argument that this issue should be decided on the test enunciated in *United States* v. *Gilmore*, 372 U.S. 39 (1963), that in determining whether the losses involved were proximately related to petitioner's trade or business we must look to the origin and character of the advances or debts (we assume) rather than the consequences to petitioner's business of not making the advances. We need not consider here whether such argument is apposite because our conclusions would be the same even under that test. We comment in passing, however, that the *Gilmore* case was not cited by either party in their original briefs filed in this Court, nor was it referred to in the majority opinion of the Supreme Court in *United States* v. *Generes*, 405 U.S. 93 (1972). It was cited, without elucidation, by Justice Marshall in his concurring opinion in *Generes*.

been made between dominant motivation and significant motivation, it is our impression that it must be clear from the record that the primary reason for making the advances which gave rise to the debts was business related rather than investment related, and that an equally balanced dual relationship is not enough, much less a mere "significant" business-related motivation.

Approaching our task with that understanding, we have reviewed the record in its entirety and have concluded that the business-related motivation has not been shown to be so apparent as to be considered dominant with regard to the indebtedness that became worthless in 1965. When petitioner entered into the oil-well-servicing business which ultimately became Smith Petroleum, it is clear that he expected to make a profit from his investment in that business. He chose to keep it separate from his construction business by operating it first as a partnership and then under a corporate charter. The business was sufficiently successful at first to justify the purchase of a piece of equipment costing in excess of $120,000 in 1963. Unfortunately the business slacked off in 1964 and 1965 although its gross receipts nearly equaled those of its only profitable year 1962. However, these gross receipts were not sufficient to cover the expenses which were obviously increased considerably by the amortization of the cost of the new equipment. Starting in 1963 and continuing in 1964 and 1965 petitioner advanced money from his construction business to Smith Petroleum to enable the latter to meet its operating costs and other obligations. We feel certain that petitioner, being a successful businessman, would not have started draining money from his construction business in 1963 to keep Smith Petroleum going unless he thought it could be made profitable. We recognize that he did not want Smith Petroleum to go bankrupt for fear that it might adversely affect his credit rating for his construction business, but he could certainly have achieved this result at less cost to himself by terminating the operations of Smith Petroleum sooner than he did. Hence, we are convinced that his principal reason for continuing the business of Smith Petroleum until the end of 1965 and pouring good money after bad into it was the thought or hope that he could either eventually make it profitable or could hold onto it long enough to cut his losses on his investments in it. It is not a convincing argument to say that petitioner would not advance approximately $85,000 to Smith Petroleum just to protect his $20,000 initial capital investment therein, because the advances were made over a period of 3 years, a bit at a time, and each time an advance was made and not repaid petitioner had an increased investment in Smith Petroleum to try to save.

The conclusion from the above discussion is that we are not convinced that petitioner's advances to Smith Petroleum in 1963, 1964, and 1965 were motivated primarily to protect the credit rating of his

construction business. In fact, we are convinced that those advances were dominantly motivated by his desire to recover his investment in Smith Petroleum or at least minimize his losses on that investment. It follows that the debts that became worthless in 1965 are not deductible as business bad debts.

By the end of 1965 petitioner apparently concluded that he could not save Smith Petroleum and tossed in the towel; Smith Petroleum ceased doing business as of the end of 1965. Nevertheless petitioner found it necessary, or at least important, to advance an additional $6,844.32 to Smith Petroleum in the early part of 1966 so it could pay off its creditors. When these advances were made Smith Petroleum had no operating income and petitioner had no prospect of recouping his investment therein. However, since petitioner had taken over Smith Petroleum entirely and locally, at least, Smith Petroleum and Smith Gravel, the name under which petitioner's construction business operated, had come to be considered a part of the same operation, it became even more important for petitioner's construction business that Smith Petroleum not default on its obligations. At this time we are convinced that what had been a significant motivation surfaced as petitioner's dominant, if not sole, motivation in advancing the additional funds and incurring the additional losses. This was done to protect petitioner's credit rating for bonding purposes in his construction business. We held in our original opinion that advances made with this motivation were related to petitioner's trade or business. We adhere to that conclusion; and since this motivation for the advances made after 1965 was the dominant motivation it follows that the losses suffered in 1966 as a result of those advances were proximately related to petitioner's trade or business, as specified in the regulation. See *United States* v. *Generes, supra.* Hence they are deductible as business bad debts under section 166 (a) (1), I.R.C.[2]

Our conclusions drawn from the evidence in this case, reconsidered in light of *United States* v. *Generes, supra,* are that the debts owing petitioner by Smith Petroleum which became worthless in 1965 were nonbusiness bad debts, deductible only as such, but that the debt which became worthless in 1966 was a business bad debt deductible as such. Since these conclusions may require additional computations to arrive at the correct amounts of the deficiencies in petitioners' tax liability,

*Decision will be entered under Rule 50.*

---

[2] We recognize that in the majority opinion of the Supreme Court in *United States* v. *Generes, supra,* it is stated "The debt is one or the other in its entirety, for the Code does not provide for its allocation in part to business and in part to nonbusiness." In *Generes* there was a single debt involved, created as a result of an indemnification loss incurred by petitioner. We believe the statement quoted above refers to the possibility under the law of attributing a part of a single debt to business and the remaining part of the same debt to nonbusiness where there is a dual motivation in making the advances that give rise to the debts. We do not believe it applies to debt created through a series of advances made over a period of time under differing circumstances such as we find here.