ROY E. KNOEDLER and NELLIE D. KNOEDLER, ET AL. [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Knoedler v. Commissioner
Docket Nos. 3031-72, 4996-72 & 4997-72
United States Tax Court
T.C. Memo 1974-85; 1974 Tax Ct. Memo LEXIS 235; 33 T.C.M. (CCH) 443; T.C.M. (RIA) 74085; April 8, 1974, Filed. *235 The petitioners advanced funds to their wholly-owned corporation by which they were employed. Held: The dominant motivation of these employee-stockholders in making loans to their corporation was not to protect their status as salaried employees and therefore such loans were not proximately related to their trade or business as employees. Losses suffered by them in connection with said loans resulted from nonbusiness bad debts, deductible only as short-term capital losses under sec. 166(d) of the 1954 Code. Michael J. Messina, For the Petitioners. George T. Morse, III for the Respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined deficiencies in the petitioners' federal income tax as follows: Petitioner
Docket No.
Year
Deficiency Roy E. and Nellie D. Knoedler
3031-72
1965
$2,885.00
1966
1,892.00
1968
2,585.91
Estate of Fred E. Knoedler, Deceased, Robert L. Knoedler, Executor
4996-72
1965
806.43
1966
1,409.25
Robert L. and Helen B. Knoedler
4997-72
1965
2,210.72
1966
2,280.75
1967
1,444.96
1968
994.78
The sole issue presented for our determination is whether the petitioners, who were both stockholders and employees of Knoedler Manufacturers, Inc., are entitled *236 to business or nonbusiness bad debt deductions under the provisions of section 166 [2] for loans which they made to that corporation and which became worthless in 1968. [3] OPINION All of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Roy E. Knoedler and Nellie D. Knoedler are husband and wife who, at the time of the filing of the petition herein, maintained their residence in Overland Park, Kansas. They filed their joint federal income tax returns for the calendar years 1965 and 1966 with the district director of internal *237 revenue at Chicago, Illinois and for the calendar year 1968 with the Internal Revenue Service Midwest Region. Robert L. Knoedler, Executor of the Estate of Fred E. Knoedler and a petitioner individually herein, was a resident of Streator, Illinois at the time of the filing of the petition herein. Fred E. Knoedler filed a joint federal income tax return with his wife Eula M. Knoedler, who died on June 2, 1965, for the calendar year 1965 and an individual federal income tax return for the calendar year 1966 with the district director of internal revenue at Chicago, Illinois. Robert L. Knoedler and Helen B. Knoedler are husband and wife who, at the time of the filing of the petition herein, maintained their residence in Streator, Illinois. They filed their joint federal income tax returns for the calendar years 1965, 1966 and 1967 with the district director of internal revenue at Chicago, Illinois and for the calendar year 1968 with the Internal Revenue Service Midwest Region. On or about July 1, 1946, Fred E. Knoedler, age 53, Robert L. Knoedler, age 25 and Roy E. Knoedler, age 30 (hereinafter referred to as Fred, Robert and Roy or as the petitioners) formed a partnership to be *238 known as Knoedler Manufacturers, with its principal office in Streator, Illinois. The initial capital of the partnership consisted of cash contributions of $8,178 and $645 made by Fred and Robert, respectively. [4]Knoedler Manufacturers was initially engaged only in the manufacture and sale of operator seats for farm tractors. During 1948, a decision was made to incorporate the partnership. As a result of this decision, the partnership was incorporated on October 7, 1948 under the laws of the State of Illinois and became known as Knoedler Manufacturers, Inc. (hereinafter Manufacturers). By the time of incorporation, the partnership had expanded from its initial capital contribution of $8,823 to equity of $326,018.75. *239 The newly formed corporation received assets valued at $100,000 as capital contributions and it issued 1,000 shares of no par common stock to the petitioners and their wives in the following amounts: Fred E. Knoedler
220 shares
Eula M. Knoedler
180 shares
Robert L. Knoedler
180 shares
Helen B. Knoedler
120 shares
Roy E. Knoedler
160 shares
Nellie D. Knoedler
140 shares
At all times during which Fred, Robert and Roy owned sotck in Manufacturers, they occupied the following salaried positions as corporate officers: Fred, president; Robert, vice president; and Roy, secretary-treasurer. At no time did Nellie D., Eula M. or Helen B. Knoedler participate in the active conduct of the business of Manufacturers. Following its incorporation, Manufacturers added the following product lines, either purchased from other companies or developed by Manufacturers itself, to its initial line of tractor seats, some of which were successful and were continued and others which were not: Year
Product Line 1949
Tractor platform
1950
Safety device for mechanical corn pickers
1952
Oats harvesting device
1953
New design tractor seat
1956
Oat huller and grain cracker device; Auger wagon
1957
Elevator line
During the corporation's *240 fiscal year ending May 31, 1951 During the corporation's fiscal year ending May 31, 1951, the petitioners made initial loans to the corporation in the aggregate amount of $109,790. During this same year, the corporation's inventories increased from $83,050.59 to $190,067.84 although total assets increased only from $384,370.50 to $437,682.96. During the corporation's 1952, 1953 and 1954 fiscal years the loan balances aggregated $116,790.00, $117,893.43 and $110,790.00, respectively. During these latter three years, inventories increased by approximately $66,000 while total assets increased by around $60,000. The petitioners were owed the following balances on loans made to Manufacturers at the end of the corporation's fiscal years 1955 through 1959: Year
Fred
Robert
Roy
Total 1955
$25,000.00
$25,000.00
$25,000.00
$ 75,000.00
1956
77,632.05
53,632.07
35,632.07
166,896.19
1957
83,832.08
53,632. 07
35,362.07
173,096.22 *
1958
87,832.08
53,632.07
35,632.07
177,096.22 *
1959
87,832.08
53,632.07
35,632.07
177,096.22
The loan balances from 1959 to 1968 remained at approximately the same figures. During Manufacturers' 1959 fiscal year, *241 a $200,000 loan was negotiated with the Small Business Administration. Manufacturers' net income or loss and shareholders' equity (including the initial capital contribution of $100,000) for the fiscal years ending May 31, 1949 to 1959 was as follows: Year
Income or (Loss)
Shareholders' Equity 1949
$111,102.36
$ 211,102.36
1950
51,343.54
262,445.90
1951
26,940.97
289,386.87
1952
27,324.11
316,710.98
1953
10,293.47
327,004.45
1954
( 17,064.51)
309.939.94
1955
( 8,691.43)
301,248.51
1956
( 70,997.18)
230,251.33
1957
32,671.97
262,923.30
1958
38,077.30
301,000.60
1959
( 12,176.04)
288,824.56 The petitioners received the following compensation from Manufacturers and income from other sources and paid the following federal income taxes for their taxable years 1949 through 1959 [5]: Fred E. Knoedler Year
Salary from Manufacturers
Other Income
Tax Liability 1949
$18,149.99
$1,721.02
$3,909.56
1950
17,820.57
1,460.19
3,869.58
1951
22,457.53
1,387.39
6,033.52
19 52
20,100.64
1,493.66
5,681.84
1953
18,241.30
1,630.10
5,027.14
1954
17,472.22
1,962.80
4,339.90
1955
20,631.68
2 ,165.33
5,506.86
1956
9,999.60
3,083.77
2,273.68
1957
16,093.54
3,296.40
3,580.42
1958
17,323.28
3,606.31
4,440.06
1959
9,492.23
-
1,271.46
Robert L. Knoedler
Year
Salary from Manufacturers
Other Income
Tax Liability
1949
$18,149.99
$ 513.40
$ 3,215.14
1950
17,820.57
571.15
3,259.94
1951
22,457.53
1,187.95
5,487.74
1952
20,100.64
1,32 0.06
5,159.86
1953
18,241.31
1,456.50
4,505.18
1954
17,472.22
1,387.53
3,757.92
1955
20,631.67
996.24
4,677.49
19 56
9,999.60
2,808.42
2,046.09
1957
17,324.38
-
3,297.31
1958
17,323.28
1,966.51
4,086.53
1959
12,999.78
-
2,251.94
Roy E. Knoedler
Year
Salary from Manufacturers
Other Income
Tax Liability
1949
$18,149.90
$1,280.77
$ 3,100.92
1950
17,820.57
1,214.82
3,108.06
1951
22,457.53
1,445.55
5,148.08
1952
20,100.64
1,444.40
4,751.12
1953
18,241 .31
1,444.40
4,081.14
1954
17,472.22
1,284.28
3,366.96
1955
20,631.67
194.08
3,996.76
1956
9,999.60
2,055.10
1,560.03
1957
16,158.06
-
2,550.98
1958
16,920.28
1,425.28
2,950.68
1959
12,999.78
-
1,783.94
*242 On November 26, 1968, a contract of sale was entered into between Manufacturers and Streator Dependable Manufacturing Co., Inc. (Streator) whereby Streator was to acquire all of the capital stock of Manufacturers held by petitioners (including their wives). As part of this contract of sale, the petitioners agreed to be compensated only partially for the loans they made to Manufacturers and to release the corporation from any further obligation to them on these loans. At the time the stock of Manufacturers was sold on November 26, 1968, the petitioners were owed the following amounts as a result of loans to the corporation: Fred E. Knoedler
$75,013.35
Robert L. Knoedler
51,091.48
Roy E. Knoedler
40,818.48
The amounts of the outstanding loans to stockholders that became worthless during the calendar year 1968 are as follows: *243 Fred E. Knoedler
[6] $59,701.63
Robert L. Knoedler
40,665.58
Roy E. Knoedler
[7] 29,306.19
On their federal income tax returns for the calendar year 1968, the petitioners Fred E. Knoedler, Robert L. and Helen B. Knoedler, and Roy E. and Nellie D. Knoedler claimed $59,013.35, $40,665.58, and $40,818.00, respectively, as deductions from ordinary income resulting from bad debts arising out of their respective loans to Manufacturers. The petitioners Roy E. and Nellie D. Knoedler, Fred E. Knoedler, and Robert L. and Helen B. Knoedler filed applications for tentative carryback adjustments with the Internal Revenue Service in 1969 to carryback their net operating losses for 1968 to the taxable years 1965 and 1966, 1965 and 1966, and 1965, 1966 and 1967, respectively. The Internal Revenue Service *244 granted the applications and issued refund checks to the petitioners. In his notice of deficiency to Roy E. and Nellie D. Knoedler, the respondent determined that these petitioners' loss claimed for the taxable year 1968 in the amount of $40,818 was a capital loss rather than an ordinary loss since it was determined not to be a business bad debt and that consequently no net operating loss was sustained in 1968 and no carryback was allowable for 1965 or 1966. In his notice of deficiency to Fred E. Knoedler and to Robert L. and Helen B. Knoedler, the respondent determined that these petitioners' losses claimed for the taxable year 1968 in the amounts of $59,013.35 and $40,665.58, respectively, were not allowable as ordinary losses since they were not business bad debts and furthermore were not allowable as nonbusiness bad debt deductions in that year since the loans were not totally worthless in 1968. Accordingly, the respondent determined that the tentative carryback adjustments were erroneously allowed. The sole issue presented requires our determination as to whether the petitioners are entitled to business bad debt deductions as provided in section 166(a) [8] or to nonbusiness *245 bad debt deductions as provided in section 166(d) [9] *246 for loans which they made to Manufacturers, a corporation in which they were both stockholders and employees. The resolution of this issue depends upon the character of the bad debts, whether they are business or nonbusiness in nature. This issue presents a question of fact to be determined in light of all the facts and circumstances in each particular case. Oddee Smith, 55 T.C. 260, 267 (1970), remanded for consideration in light of Generes at 457 F.2d 797 (C.A. 5, 1972); opinion on remand 60 T.C. 316 (1973); Stuart M. Sales, 37 T.C. 576, 580 (1961); section 1.166-5(b), Income Tax Regs.
Section 1.166-5(b), Income Tax Regs., provides that for tax purposes the character of a bad debt is determined by the relationship which the debt bears to the taxpayer's trade or business. If the debt bears a proximate relationship to a trade or business of the taxpayer, at the time of making the loans or at the time of worthlessness of the debt, it qualifies as a business bad debt. United States v. Generes, 405 U.S. 93 (1972) at 96; Oddee Smith, supra at 55 T.C. 260, 267; I. Hal Millsap, Jr., 46 T.C. 751, 754, fn. 3 (1966), affd. 387 F.2d 420 (C.A. 8, 1968); section 1.166-5(b), Income Tax Regs. *247 The respondent does not contest the characterization of the loans as debt (rather than contributions to capital), nor does he contend that the loans are unrelated to the petitioners' trade or business as employees of Manufacturers. Rather he contends that there is no proximate relationship between the loans and the petitioners' trade or business as employees. The petitioners, on the other hand, contend that the requiste relationship is present. The parties are in agreement that the proper measure for determining whether a bad debt has a prxoimate relationship to a taxpayer's trade or business is that of dominant motivation. United States v. Generes, supra at 103. In consideration of the issue at hand, it is the petitioners' dual status as stockholders and employees which presents the difficulty in determining motivation. Here, the petitioners' interest as stockholders is an investment or nonbusiness interest while their status as salaried employees is a business interest. United States v. Generes, supra at 100-101. It must be clear from the record that the primary and dominant reason for making the loans was business related rather than investment related; an equally balanced relationship *248 between the two interests, much less a mere significant business related motivation, is not enough. Oddee Smith, supra at 60 T.C. 316, 318-319. In the instant case we cannot say that the petitioners' dominant and primary motive was the protection of their employee status and their salaries derived therefrom. As the petitioners point out in attempting to distinguish the instant case from Generes, their salaries from Manufacturers were their principal sources of income and they were fulltime employees of Manufacturers, neither of which was the case in Generes. However, such facts alone do not convince us that the petitioners' dominant motivation in making the loans was business related especially in light of the fact that a cautious approach is dictated when considering deductions for business bad debts. United States v. Generes, supra at 102; Whipple v. Commissioner, 373 U.S. 193, 202, 204 (1963). In addition to the facts that their salaries constituted their principal source of income and that they were employed full time by Manufacturers, the petitioners assert that a comparison of their salaries to their investment in Manufacturers supports their claim that the loans were business *249 related. On incorporation of Manufacturers in 1948, the petitioners' investment totalled $100,000, $40,000 by Fred E. and Eula M. Knoedler, $30,000 by Robert L. and Helen B. Knoedler, and $30,000 by Roy E. and Nellie D. Knoedler. [10] Between 1949 and 1959, the petitioners' pre-tax compensation averaged over $17,000 annually, or approximately $52,000 in total each year, and their after-tax compensation averaged just under $14,000 annually or approximately $41,500 in total each year. In light of other factors to be mentioned below, we do not think this comparison, either on a cumulative or individual basis, is either favorable or unfavorable to the petitioners' position. We do not believe that a mechanical comparison of salary and original investment is the only factor to *250 consider in determining whether the loans in question were investment or business related. Rather we should consider the inferences to be drawn from all the facts and circumstances. Hogue v. Commissioner, 459 F.2d 932, 938 (C.A. 10, 1972), affirming a Memorandum Opinion of this Court; and Miles Production Company v. Commissioner, 457 F.2d 1150, 1155 (C.A. 5, 1972), affirming a Memorandum Opinion of this Court. In addition to their original investment of $100,000 the petitioners stood to lose the earnings retained in the business by Manufacturers, a substantial amount in itself at all times. [11] *251 In the fiscal year ending May 31, 1956, when the total loan balance went from $75,000 to $166,896.19, an increase of $91,896.19, the petitioners' total salaries amount to only $29,998.80. At this time, just prior to the additional loan of $91,896.19, the petitioners' interest in Manufacturers must also include the $75,000 outstanding loan balance, as the petitioners also stood to lose this latter amount if Manufacturers went under. We think the evidence in the instant case supports the inference that the financing of corporate expansion in existing product lines and into new product lines was provided partly through shareholder loans. In the fiscal year 1951, when the first loans of $109,790 were made, Manufacturers' inventories rose from $83,050.59 to $190,067.84. While we realize that total assets rose only by approximately $53,000 that year and while we cannot say that the loans were used directly to increase inventories, we think that the loans were connected with the business expansion of Manufacturers and thus from the petitioners' standpoint as stockholder-employees, were investment related rather than business related. The petitioners contend that because Manufacturers sustained an overall operating loss during the fiscal years 1951 through 1956 and because Manufacturers' sales and total assets did not increase substantially during that same period, we should conclude that in making the loans in question the petitioners were concerned about their continued employment and the protection *252 of their salaries. While the record may show some reason for the petitioners to be concerned about their employment, we do not think it shows that such concern was their dominant motivation. The following statement from Whipple v. Commissioner, supra at 202, is of importance in the instant case: * * * Even if the taxpayer demonstrates an independent trade or business of his own, care must be taken to distinguish bad debt losses arising from his own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conudct of the corporate business. We do not think the petitioners have demonstrated that their dominant motivation in making the loans to their corporation was business related and thus we conclude that the loans in question were not proximately related to the petitioners' trade or business as employees. Accordingly, the petitioners are not entitled to business bad debt deductions under the provisions of section 166(a) but must resort to the provisions of section 166(d) for any allowable deduction. Because we believe the facts of the instant case fall within the provisions of section 166(d) and support a deduction thereunder, *253 the petitioners are entitled to short-term capital losses for the amounts stipulated as worthless in 1968. Decisions will be entered under Rule 155. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Fred E. Knoedler, Deceased, Robert L. Knoedler, Executor, docket No. 4996-72; and Robert L. Knoedler and Helen B. Knoedler, docket No. 4997-72. ↩
2. All Code references herein are to the Internal Revenue Code of 1954, as amended and as applicable to the taxable year involved, unless otherwise indicated. ↩
3. The resolution of this issue also determines whether the losses should be carried back under the provisions of sec. 172 from 1968 to the prior tax years involved herein. In the case of Robert L. and Helen B. Knoedler, for the taxable year 1968, the allowable medical and dental expense deduction will be controlled by the adjusted gross income, which in turn depends on the decision reached herein. ↩
4. We note in passing that the partnership agreement stated that the partners of Knoedler Manufacturers included not only Fred E. Knoedler, Robert L. Knoedler and Roy E. Knoedler but also their wives, Eula M., Helen B., and Nellie D. Knoedler, respectively. The capital contribution of these partners was stated in the partnership agreement to total $19,121.97. The apparent inconsistencies between the partnership agreement and the stipulation of facts were not explained. ↩
*. Increased loan balance represents accrued interest loaned to the corporation. ↩
5. The schedules of the petitioners' compensation based on Manufacturers' fiscal year ending May 31 is different from the above schedules based on the petitioners' calendar year reporting, except that the amounts of compensation during Manufacturers' 1954, 1955 and 1956 fiscal years are the same as those reported for the petitioners' 1954, 1955 and 1956 calendar years. ↩
6. The respondent concedes that this amount, rather than the $59,013.35 claimed on the 1968 return, is the correct part of the loan balance of Fred E. Knoedler which became worthless in 1968. ↩
7. The petitioners Roy E. and Nellie D. Knoedler concede that this amount, rather than the $40,818.00 claimed on their 1968 return, is the correct part of the loan balance to Roy E. Knoedler which became worthless in 1968. ↩
8. SEC. 166. Bad Debts. (a) GENERAL RULE. - (1) WHOLLY WORTHLESS DEBTS. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) PARTIALLY WORTHLESS DEBTS. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. ↩
9. SEC. 166. Bad Debts. (d) NONBUSINESS DEBTS. - (1) GENERAL RULE. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) NONBUSINESS DEBT DEFINED. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
10. We note that the petitioners' wives owned part of the stock of Manufacturers, but we do not think and the petitioners have not argued that the salary versus investment comparison should be made in instant case only with regard to Fred E., Robert L. and Roy E. Knoedler's interests in the corporation. The husbands' concern with and interest in their wives' investment should be as great as in their own investment. ↩
11. Although Manufacturers' net worth as stated on its balance sheet does not necessarily reflect true valve and is only evidentiary in value (Cf. Doyle v. Mitchell Bros. Co., 247 U.S. 179, 187 (1918); and Art Metal Construction Co., 4 B.T.A. 493, 498↩ (1926)), we think it is a valuable consideration in the instant case.