DAVID N. GRIFFITH and BONNIE B. GRIFFITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffith v. Commissioner
Docket No. 1190-72
United States Tax Court
T.C. Memo 1974-159; 1974 Tax Ct. Memo LEXIS 159; 33 T.C.M. (CCH) 686; T.C.M. (RIA) 74159; June 19, 1974, Filed. David N. Griffith, pro se. J. B. Talley, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable years 1968 and 1969 in the amounts of $4,641.96 and $3,225.51, respectively. Some of the adjustments made to petitioners' income by the Commissioner in his statutory notice of deficiency have not been contested by petitioners. The sole issue remaining for our decision is whether losses from worthlessness of advances to payments for the benefit of petitioners' wholly owned corporation represent business or nonbusiness bad debts. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of fact and attached exhibits are incorporated *160 by reference. Petitioners are husband and wife and, at the time they filed their petition herein, they resided at Dadeville, Alabama. They filed their joint Federal income tax returns for the taxable years 1968 and 1969 with the director, Internal Revenue Service Center, Chamblee, Georgia. Throughout the years 1967, 1968 and 1969, Petitioner David N. Griffith was a dentist and Petitioner Bonnie B. Griffith was a registered nurse. Earnings from their respective professions were as follows: 1967
1968
1969 Dr. Griffith
$18,032.37
$24,964.57
$17,412.82
Mrs. Griffith
2,245.00
10,435.45
11,107.19
In July 1963, a corporation was organized by the name of Cancellation Shoes, Inc., which had capital stock of $3,000 and paid in capital of $7,500. Petitioners were issued one-third of the shares for $3,500 in cash and the remaining two-thirds of the shares were issued equally to two unrelated individuals who each paid $3,500 for his shares. One year after incorporation, petitioners acquired the shares of the other two shareholders for $7,000. Petitioners continued to be the sole shareholders after such acquisitions. Cancellation Shoes was in the *161 retail shoe business and opened with one store located in Auburn, Alabama. When the first store opened, Mrs. Griffith performed most all services, including selling shoes and buying merchandise. The corporation later hired a manager and, as the business expanded, Mrs. Griffith took a less active part in the conduct of the business. Dr. Griffith did not participate in the management or operation of Cancellation Shoes. The store in Auburn was very successful; therefore, Cancellation Shoes opened a store in Sylacauga, Alabama, in August 1966. Petitioners borrowed $10,000 from Peoples Bank and Trust Company of Sylacauga to finance the new store. The loan was evidenced by an installment note payable in 60 equal installments of $193.33. The note was transferred to Cancellation Shoes which paid the monthly installments from June 1966 through July 31, 1967. On October 12, 1966, petitioners borrowed for 6 months an additional $5,000 from the bank in Sylacauga which note was transferred to Cancellation Shoes. The funds obtained by that loan were used by Cancellation Shoes. The loan was extended on April 14, 1967, to October 3, 1967, and extended again on October 12, 1967, to April 1, 1968. *162 On November 1, 1966, Cancellation Shoes borrowed $5,000 from the First National Bank of Auburn and the note was guaranteed by Mrs. Griffith, and on February 9, 1967, the corporation borrowed an additional $5,000 from the same bank which was also guaranteed by Mrs. Griffith. On August 11, 1967, Cancellation Shoes borrowed $5,000 from Dr. Griffith's sister, Miss Lucille Griffith. Petitioners made payments on notes of Cancellation Shoes as follows: 1968
1969 Peoples Bank & Trust Co. of Sylacauga
$4,643.40
$ 4,719.96
First National Bank of Auburn
4,968.31
3,680.00
Miss Lucille Griffith
-0-
4,000.00
TOTAL
$9,611.71
$12,399.96
Cancellation purchased shoes from Genesco, Inc., and petitioners paid Genesco $1,117.56 for shoes sold to Cancellation Shoes. During 1967 and 1968, petitioners advanced $2,437.05 to Cancellation Shoes. After the opening of the second store, Cancellation Shoes made a change in management and thereafter began to operate at a loss. For its fiscal year ended July 31, 1967, it sustained an operating loss of $19,522.79 and for its fiscal year ended July 31, 1968, it sustained an operating loss of $44,469.28. Cancellation *163 Shoes was liquidated during its fiscal year ended July 31, 1969, and was unable to satisfy its outstanding indebtedness. Mrs. Griffith received a salary from Cancellation Shoes for the calendar years 1966, 1967 and 1968 in the amounts of $3,888.95, $2,245 and $900, respectively. Cancellation Shoes paid no dividends during its corporate existence. Petitioners claimed deductions for the worthlessness of debts from Cancellation Shoes on their returns for the taxable years 1968 and 1969 in the amounts of $14,666.32 and $12,159.66, respectively. The Commissioner, in his statutory notice of deficiency, disallowed the deductions on the grounds that the debts represented non-business bad debts. ULTIMATE FINDING OF FACT Funds advanced by petitioners to Cancellation Shoes, guarantees paid by petitioners on loans to Cancellation Shoes, and debts of Cancellation Shoes paid by petitioners constituted nonbusiness bad debts when they became worthless in 1967 and 1968. OPINION The sole issue is whether the losses from worthlessness sustained by petitioners may be deducted by them in full as business losses or whether they are limited to deductions of $1,000 per year by reason of the *164 losses constituting nonbusiness bad debts. Payments on loans made to Cancellation Shoes guaranteed by petitioners result in the same tax consequences as loans by petitioners to Cancellation Shoes. Putnam v. Commissioner, 352 U.S. 82 (1956). The activities of serving a corporation owned by an individual does not constitute a trade or business of the individual. Whipple v. Commissioner, 373 U.S. 193 (1963). It appears that the only basis upon which petitioners can claim the debts to be business debts rather than nonbusiness debts is the protection of Mrs. Griffith's salary. It was small compared to the investment in Cancellation Shoes. The applicable test is what was the dominant motive in making loans. United States v. Generes, 405 U.S. 93 (1972). The issue is factual and petitioners bear the burden of proving a dominant business motive. Oddee Smith, 60 T.C. 316 (1973). We have carefully considered the testimony of Mrs. Griffith and the other evidence and conclude that the advances were made, the loans guaranteed and the debts were paid by petitioners to improve and enhance petitioners' investment in the business. Mrs. Griffith *165 felt that if one store did well, two stores would do twice as well and, if they prospered, she would not have to work in the stores but would reap the benefits as an owner. She relied upon the experience of managers to operate the stores and changed managers in order to employ one of greater experience. From all the evidence, it is clear that the advances, guarantees and payment of Cancellation Shoes' liabilities were investment related and the losses resulting from their worthlessness are, therefore, nonbusiness bad debts and deductible only to the extent provided in section 166(d) of the Internal Revenue Code of 1954. Decision will be entered for the respondent.