JOHN N. BOWERS AND ALMA S. BOWERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowers v. Commissioner
Docket No. 850-78.
United States Tax Court
T.C. Memo 1982-635; 1982 Tax Ct. Memo LEXIS 112; 45 T.C.M. (CCH) 2; T.C.M. (RIA) 82635; November 1, 1982; Reversed and Remanded August 31, 1983 Ted T. Mercer, specially recognized for the petitioners.
Lawrence D. Garr, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: This case is before us on remand from the Fourth *113 Circuit Court of Appeals. In our previous consideration of the issue herein, [1] we found that a worthless loan could not be deducted as a business had debt because petitioner husband, John N. Bowers (hereinafter petitioner), was not in the trade or business of lending money and because he did not show that the loan was proximately related to his trade or business. Upon appeal, the Fourth Circuit Court of Appeals agreed that the worthless loan could not be deducted as a business bad debt on either of these theories, but vacated and remanded the case for us to make explicit findings of fact regarding petitioner's contention "that his sole or predominant motivation for the loan was to maintain the enhanced level of his income as an employee of the corporation resulting from the handling of the Basiliko transaction." Bowers v. Commissioner,678 F.2d 509, 510 (4th Cir. 1982). During further proceedings under mandate both petitioner and respondent agreed they had nothing to add to their original stipulation of facts, but submitted additional informal briefs for our consideration. Respondent *114 determined a deficiency of $2,430.70 in petitioners' Federal income tax for the 1974 taxable year. The deficiency results from respondent's determination that the worthlessness of a $10,000 loan made by the petitioner to George Basiliko (hereinafter Basiliko) should be treated as a nonbusiness bad debt loss under section 166(d), [2] deductible as a short-term capital loss, rather than deductible as a business bad debt. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by reference. At the time the amended petition was filed in this case, petitioner husband resided at 315 West Patrick Street, Frederick, Maryland, and petitioner wife resided at 144 Key Parkway, Frederick, Maryland. Petitioners filed a timely joint Federal income tax return, Form 1040, on August 15, 1975. A timely statutory notice of deficiency for the 1974 taxable year was issued to petitioners on November 1, 1977. During all pertinent years, petitioner was president and *115 sole shareholder of John N. Bowers Realty, Inc., a corporation headquartered in Frederick, Maryland which engaged in general real estate sales. He was also a real estate broker. During all pertinent years, petitioner and various other real estate salespersons and clerical employees worked for John N. Bowers Realty, Inc. Petitioner, unlike the other real estate salespersons employed by John N. Bowers Realty, Inc., had no arrangement with the corporation whereby he was paid a certain commission on sales where he was the sales or listing agent. Similarly, petitioner did not have an arrangement with the corporation by which he would receive a specified salary. Unlike other employees, petitioner was able to take money from the corporation as money was generated. Basiliko was top executive officer and owner of G & B Real Estate (hereinafter "G & B"), headquartered in Silver Spring, Maryland. In March of 1972, Basiliko purchased all the stock of Crown Oil and Wax Company, Inc. (hereinafter "Crown Oil"), headquartered in Frederick, Maryland, and was appointed chairman of the board. Beginning in 1970 and continuing through all fiscal tax years through 1974, except for 1971, *116 John N. Bowers Realty, Inc. acted as an agent in various real estate transactions for Basiliko, G & B, Crown Oil, or some combination of Basiliko's ventures. The listing agreements with Basiliko were signed by John N. Bowers. The receipts resulting from the listing agreements accrued to John N. Bowers Realty, Inc., not to petitioner personally. The listing agreements were considered corporate agreements by petitioner and John N. Bowers Realty, Inc. The receipts were not passed to petitioner as salary in their entirety or as they were received. He took from his corporation whatever money he wanted and when it was available. Petitioner John Bowers considered his personal business and the corporate business as synonymous. On May 30, 1972, petitioner personally loaned $10,000 to Basiliko. The loan contained no provision for interest. On the date of the loan, John N. Bowers Realty, Inc. did not have sufficient funds available to lend $10,000 to Basiliko. The loan was made to Basiliko as an individual, not to any business venture with which Basiliko was involved. The loan was never repaid and became totally worthless in December of 1974. ULTIMATE FINDINGS OF FACT *117 Petitioner John Bowers was not in the trade or business of lending money. Petitioner's dominant motivation in making the loan was personal and not related to his position as an employee of John N. Bowers Realty, Inc. The loan by petitioner John Bowers to Basiliko which became worthless in 1974 was not proximately related to John Bowers' trade or business. OPINION Once again, the only question for decision in this case is whether the loss on the $10,000 loan should be treated as a business bad debt as claimed by petitioner, or as a nonbusiness bad debt as determined by respondent. If characterized as a business bad debt, the entire amount is eligible for treatment as an ordinary loss, and is deductible under section 166(a)(1) against ordinary income. If, on the other hand, the loss is determined to be a nonbusiness bad debt, it is deductible as a short-term capital loss under section 166(d)[3] and subject to the capital loss limitations of section 1211. *118 Guidelines for answering this question have been established in a number of cases over the past few years. See United States v. Generes,405 U.S. 93 (1972); Shinefeld v. Commissioner,65 T.C. 1092 (1976); Smith v. Commissioner,60 T.C. 316 (1973); Saia v. Commissioner,T.C. Memo. 1974-301, affd. in an unpublished opinion 536 F.2d 388 (5th Cir. 1976). [4]
In order to show that the loan was a business bad debt rather than a nonbusiness bad debt, petitioner must show that it is proximately related to his trade or business.Generes,supra;sec. 1.166-5, Income Tax Regs.[5] In this case, there is some indication that the petitioner was claiming that he was in the *119 business of lending money as well as in the business of being an officer and employee of his wholly owned corporation. The claim of being a money lender was not pursued and we consider it abandoned. Moreover, there is no evidence in the record of loans being made by petitioner on a regular basis. Imel v. Commissioner,61 T.C. 318, 323 (1973). Petitioner contends that the loan to Basiliko had a proximate connection with his trade or business of being an employee of John N. Bowers *120 Realty, Inc. To prevail with this argument, petitioner must prove that his dominant motivation in making the loan was to protect his business relationship with his wholly owned corporation. Generes,supra;Shinefeld,supra;Imel,supra.
The existence of such dominant motivation is determined by the particular facts of each case. Smith,supra;Shinefeld,supra;sec. 1.166-5(b)(2), Income Tax Regs. The fact that a "significant" business motive may exist is not enough to show a proximate relationship. Generes,405 U.S. at 103; Smith,supra. This test is used so that objective rather than subjective factors will be weighed in assessing motivation. The Supreme Court in Generes stated that the dominant motivation standard is an objective test which "prevents the mere presence of a business motive * * * from controlling the tax result at the taxpayer's convenience." 405 U.S. at 104. Petitioner argues that his motive in making the loan was to enhance his position for future business *121 with his client, and claims he felt potential future profit would have been jeopardized if he had refused to make the loan. Petitioner has not shown any relation between the loan and his business as an employee of John N. Bowers Realty, Inc. other than that perhaps flowing from good will for the company.Maintaining good will is company business and is different from petitioner's business of being an employee of the corporation. Saia,supra;Estate of Byers v. Commissioner,57 T.C. 568, 577 (1972), affd. 472 F.2d 590 (6th Cir. 1973). We note that even if petitioner were using the loan to promote good relations on behalf of his corporation, his business of being an employee of the corporation and the corporate business are separate businesses, saia,supra, and must be so treated taxwise. [6]
*122 In his informal brief, petitioner urges that the loan should be viewed without considering his relationship to his corporation and states he "made the loan personally to promote good relations on behalf of himself to increase his personal income… not to increase the equity of the corporation." [Original emphasis.] Petitioner appears by this to argue he is in a separate business from that of his corporation. He has, however, chosen to do business in the corporate form and receive salary through the corporation, and we cannot consider petitioner's claim for a business bad debt other than with reference to his employment status with John N. Bowers Realty, Inc. Petitioner submits as proof of motivation the profits of his corporation and his compensation therefrom before and after he began to have business dealings with Basiliko. He contends that although his employee status was secure, his dominant motivation for making the loan was to maintain an enhanced salary level as an employee of his corporation. [7]
*123 We do not doubt that petitioner's wholly owned corporation had business dealings and earned money through those dealings which finally inured to petitioner's benefit through the corporation. However, while petitioner has shown by this evidence that both he and his corporation profited from dealings with Basiliko, he has not shown that these profits are in any way related to the loan at issue in this case. Petitioner has not shown the loan to be related to his enhanced income. Furthermore, there is no evidence to show petitioner's business relationship with his corporation would have been affected in any way if he had not personally made the loan in question to Basiliko. [8] We, therefore, cannot conclude otherwise than that the dominant motivation for the loan in the present case was personal. The loan is thus not proximately connected to petitioner's trade or business as an employee of John N. Bowers Realty, Inc. United States v. Generes,supra.
*124 Accordingly, on the record before us, we conclude petitioner is entitled only to a nonbusiness bad debt of $10,000 for 1974. Decision will be entered for the respondent.
Footnotes
1. Bowers v. Commissioner,T.C. Memo. 1980-246↩.
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise stated.↩
3. Section 166(d)(2), in part, states that a nonbusiness debt is not: (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
4. See also Sussman v. Commissioner,T.C. Memo. 1980-228, involving a similar question, where we stated: * * * we are not persuaded by petitioner's argument that placing one's self in a position to continue to receive a salary, regardless of its source, is promoting one's trade or business.↩
5. Section 1.166-5(b)(2), Income Tax Regs. states, in part: * * * The question whether a debt is a nonbusiness debt is a question of fact in each particular case. * * * [T]he character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business↩ in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception * * *. [Emphasis supplied.]
6. Similarly, where employee and shareholder status coexist, courts scrutinize the transaction to "distinguish bad debt losses arising from [the employee's] own business and those actually arising from activities peculiar to an investor concerned with, and participating in, the conduct of the corporate business." Whipple v. Commissioner,373 U.S. 193, 202 (1963). Accord Generes,405 U.S. at 102; Estate of Byers,57 T.C. at 577↩.
7. Petitioner does not argue that his employee status would have been jeopardized if he had not made the loan to Basiliko. Cf. Imel,61 T.C. at 324 (officer-shareholder loaned money to build up his own and his company's business but did not prove retention as employee related to obtaining new business); Sussman,supra↩ (no possible loss of employment if new business not solicited successfully; new business sought to protect taxpayer's substantial investment in the company).
8. Cf. Pomeranz v. Commissioner,T.C. Memo. 1980-36↩, affd. per order (4th Cir., Feb. 2, 1981) (motivations rooted in protection of corporate president-stockholder-employee's job incidental to his dominant motivation to protect and enhance the business).