JOHN I. ANTONIUS and ELAINE H. ANTONIUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Antonius v. Commissioner
Docket No. 16839-87.
United States Tax Court
T.C. Memo 1988-585; 1988 Tax Ct. Memo LEXIS 614; 56 T.C.M. (CCH) 946; T.C.M. (RIA) 88585; December 27, 1988
Neale E. Creamer, for John I. Antonius. Cheryl B. Harris, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioners' Federal income tax of $ 25,818.00 for the taxable year 1983. He also determined an addition to tax under section 6653(a)(1) in the amount of $ 1,290.90 and that petitioner is liable for an additional 50 percent of the interest due on the part of the deficiency attributable to negligence under section 6653(a)(2). In light *615 of respondent's concession as to the additions to tax, the sole issue for decision is whether loans made by petitioner to a corporation in which he was a shareholder were business debts or nonbusiness debts. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Portland, Oregon, at the time of the filing of the petition. They filed a joint Federal income tax return for 1983 with the Internal Revenue Service Center, Ogden, Utah. Elaine H. Antonius is a party in this proceeding solely because she filed a joint tax return with petitioner for the year under consideration. John I. Antonius will hereinafter be referred to as petitioner. During 1983, petitioner was a pathologist and a full-time employee of Metropolitan Hospitals, Inc., serving on the staff at Emanuel Hospital and Health Center (the hospital). Petitioner's annual salary from the hospital was $ 100,392.84 during 1983. As of the date of trial, petitioner continued to work at the hospital as a full-time pathologist. In the fall of 1974, Kristiansen Cycle Engines Ltd., a Canadian *616 corporation (the Canadian corporation), was organized by Haakon H. Kristiansen. The Canadian corporation was organized for the purpose of developing and marketing a patented fuel-efficient engine known as the "Kristiansen Cycle." From 1975 through 1979, petitioner invested in the Canadian corporation and received 24,000 shares of stock, representing one-half of 1 percent of the corporation's total outstanding shares. On November 4, 1981, the Canadian corporation formed K-Cycle Engines (U.S.A.) Inc., a wholly owned U.S. subsidiary (the U.S. corporation). The U.S. corporation was incorporated for the purpose of raising funds for the Canadian corporation and to assume the licensing and production activities of the engine in the United States. Petitioner became the vice president and a director of the U.S. corporation on November 11, 1981, and served in these capacities until November 1983. From February 1982 until the summer of 1982, petitioner worked 40 to 60 hours per week; thereafter petitioner worked 20 hours per week. Petitioner's primary responsibility was to implement the objective of the U.S. corporation, namely to assist the Canadian corporation in obtaining financing. *617 Petitioner had the authority to sign and deposit checks on behalf of the U.S. corporation. Petitioner never received any compensation or salary from either corporation for his services. In November 1981, K-Cycle Development Company (the partnership), an Oregon limited partnership, was formed. In December 1981, petitioner contributed $ 30,000 to the partnership as a limited partner. The U.S. corporation was the sole general partner of the partnership until December 1983 when petitioner succeeded to this position. Petitioner served as sole general partner through 1986. Petitioner negotiated with Rogue Financial Services International, Inc. (Rogue), in an effort to obtain the needed financing for the Canadian corporation. The potential financing agreement would have provided the corporation with $ 10 million; however, the contract was never finalized, and no financing was received from Rogue by the U.S. or Canadian corporation. In early 1982, the Canadian corporation began to experience financial difficulties as a result of its inability to obtain the necessary financing. Between April 1982 and November 1983, petitioner advanced $ 67,000 to the U.S. and the Canadian corporations. *618 These advances were loans to the corporations and not capital contributions or any other form of investment in the corporations. In November 1983, the Canadian corporation went into receivership, and petitioner's loans became worthless. Petitioner was never repaid any portion of the loans. OPINION The sole issue for decision is whether petitioner's loans constitute business or nonbusiness bad debt. If the loans constitute a business debt, petitioner is entitled to a full deduction against ordinary income under section 166(a). [1] However, if they represent a nonbusiness debt, then petitioner is entitled only to a short-term capital loss under section 166(d). In determining whether a loss qualifies as a business bad debt under section 166(a), a taxpayer must prove that such loss is proximately related to his trade or business at the time of worthlessness. United States v. Generes,405 U.S. 93, 96 (1972); sec. 1.166-5, Income Tax Regs. This *619 proximate relationship may be established "by proof that his dominant motivation in incurring the debt was to protect his employment." Scifo v. Commissioner,68 T.C. 714, 723 (1977). Such a determination is one of fact and the burden of proof is on the taxpayer. Putoma Corp. v. Commissioner,66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). We hold that this burden has not been met herein. Initially, we deal with respondent's contention that petitioner was not in a trade or business because he was not an employee of the U.S. corporation and did not receive a current salary, no salary was ever accrued on the corporate books, and there was no formal employment contract reflecting petitioner's entitlement to a future salary. We are satisfied that petitioner was engaged in the trade or business of being an employee of the U.S. corporation. The fact that he was not currently drawing a salary is not determinative. Putoma Corp. v. Commissioner,66 T.C. at 673-674. [2]
*620 The critical question herein is whether petitioner's loss was proximately related to this trade or business. Shareholder-employees usually possess dual motives for making loans to their corporation, i.e., to protect their investment and to protect their status as an employee. United States v. Generes,405 U.S. at 100-101. In determining whether the loss is proximate to petitioner's trade or business, as compared with his investment interest, petitioner's dominant motive for making the loan must be established. United States v. Generes,405 U.S. at 103. Petitioner's dominant motive is a question of fact to be determined on the basis of the entire record. Putoma Corp. v. Commissioner,66 T.C. at 673; Smith v. Commissioner,60 T.C. 316, 318-319 (1973). Petitioner argues that the development and marketing of a fuel-efficient engine would have produced enormous financial rewards and that he was promised compensation by Haakon H. Kristiansen in such an eventuality which, according to petitioner, could have amounted to upwards of $ 100,000 per annum. The difficulty with petitioner's argument is that it has only the *621 most general support in the record, support which rests almost entirely on petitioner's self-serving testimony.[3] We have no objective evidence as to the financial prospects of either the U.S. corporation or the Canadian corporation or of the foundations of the hopes for the fuel-efficient engine, other than the bankruptcy of the Canadian corporation and the fact that the deal with Rogue fell through. We also note that the absence of a current salary has more of an impact in connection with the issue of dominant motive than in determining whether a taxpayer is engaged in a trade or business. Putoma Corp. v. Commissioner,66 T.C. at 674. Similarly, the fact that petitioner was currently earning in excess of $ 100,000 as a pathologist is not without significance. [4] Finally, petitioner testified that, aside from any consideration of compensation, he was also motivated by the prospect of an attractive career change, and the successful development of the fuel-efficient engine would add to his prestige within the scientific community. Cf. Shinefeld v. Commissioner,65 T.C. 1092 (1976). It thus appears that petitioner had mixed motives for his loans. *622 See Eisenberg v. Commissioner,78 T.C. 336, 349 (1982). In United States v. Generes,supra, the Supreme Court mandated "a cautious and not a free-wheeling approach to the business bad debt." 405 U.S. at 103. Such an approach to the record as a whole herein leaves us unpersuaded that petitioner's claimed hope of future compensation for his services sufficiently reflected a dominant motivation for the worthless loans. [5]
Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See also Goodenough v. Commissioner,T.C. Memo. 1980-28; Carter v. Commissioner,T.C. Memo. 1979-447↩.
3. Haakon H. Kristiansen was dead by the time of trial. Petitioner's testimony, that Mr. Kristiansen had promised him future compensation, is supported only by the general testimony of the only other witness, a fellow colleague. Cf. United States v. Generes,405 U.S. 93, 106↩ (1972). 4. Cf. Short v. Commissioner,T.C. Memo. 1986-360↩.
5. Cf. Burwell v. Commissioner,T.C. Memo. 1988-495↩.